UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| DF INSTITUTE, LLC | ) | CASE NO. 19-cv-452 |
| d/b/a KAPLAN PROFESSIONAL, | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE |
| | ) | |
| v. | ) | |
| | ) | |
| DALTON EDUCATION, LLC, ALLISON | ) | **COMPLAINT** |
| STEERS, AND CYNDEE REDFEARN, | ) | |
| | ) | |
| Defendants. | ) | **(Jury Demand Endorsed Hereon)** |

## COMPLAINT

Plaintiff DF Institute, LLC, doing business as Kaplan Professional ("Kaplan Professional"), brings this Complaint against Defendants Dalton Education, LLC ("Dalton"), Allison Steers ("Steers"), and Cyndee Redfearn ("Redfearn") (Steers and Redfearn, collectively, the "Individual Defendants") (the Individual Defendants with Dalton, collectively, "Defendants"). Kaplan Professional's claims are based on Defendants' misappropriation of its valuable trade secrets in support of an unlawful scheme to divert Kaplan Professional's clients to Defendants' competing company. In support of its Complaint, Kaplan Professional states as follows:

## PARTIES

1. Kaplan Professional is an Illinois limited liability corporation with its principal place of business in La Crosse, Wisconsin.

2. Dalton is a Georgia limited liability company with its principal place of business in Suwanee, Georgia.

3. Allison Steers (nee Allison Rodriguez) is an individual residing in Onalaska, Wisconsin.

4.      Cyndee Redfearn (nee Cyndee Kissel) is an individual residing in Maricopa, Arizona.

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367 because this Court has original jurisdiction over Kaplan Professional's causes of action under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b), and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Kaplan Professional's other causes of action arising under state law.

6.      Personal jurisdiction is proper under Wisconsin law because Kaplan Professional's causes of action resulted from Defendants' substantial and not isolated activities within Wisconsin, Defendants' specific wrongful acts within Wisconsin, and other grounds forming the basis for long-arm jurisdiction under Wisconsin law.

7.      Venue is proper in the Western District of Wisconsin under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

8.      Kaplan Professional operates its principal place of business in La Crosse, Wisconsin and is a professional, education-based company.

9.      Kaplan Professional is a leading provider of products and services in the Certified Financial Planning ("CFP") industry.

10.      Kaplan Professional's products include books and materials for study preparation for CFP certification.  Kaplan Professional's services include traditional and virtual classroom instruction as well as self-study programs.

11.     In addition to offering its products and services to individuals, Kaplan Professional also offers them to corporate clients and their employees.

12.     Because the CFP industry is highly competitive, Kaplan Professional's trade secrets include its proprietary client-specific research and relationship data, its strengths and weaknesses in its offerings and product lines, its sales revenue data, its training and development methods for sales employees, and its overall business strategy in maintaining its place as a leader in the CFP industry.

## Kaplan Professional's Trade Secrets and Its Efforts to Protect Them

13.     Kaplan Professional's relationships, knowledge, pricing structure, know-how, and other confidential information are critical to its ability to perform its business and maintain its competitive position in the CFP industry.

14.     To protect its trade secrets, Kaplan Professional requires employees to sign a Confidentiality and Restriction Agreement, which contains confidentiality and other restrictive covenants as they relate to employment.

15.     In addition, employees receive, review, and acknowledge the receipt of Kaplan Professional's Employee Handbook as part of the onboarding process.  The Employee Handbook includes a confidentiality policy.

16.     Throughout the tenure of their employment, employees receive updated versions of the Handbook, of which they acknowledge receipt and by which they agree to abide.

17.     Additionally, Kaplan Professional requires employees to agree to comply with its Information Technology Acceptable Use Policy.  This policy outlines the requirements and expectations for using Kaplan Professional's information and information technology resources

when conducting business.  Kaplan Professional implemented this policy to prevent misuse of its technology systems.

18.     Additionally, Kaplan Professional's Information Technology Acceptable Use Policy requires users (or employees) to return all company-issued technology resources, including company-issued laptops, upon termination of employment.

19.     Given the importance of its intellectual property and/or trade secret information, Kaplan Professional maintains a standard process when employees exit the company.

20.     As part of that standard process, Kaplan Professional conducts an exit interview, during which it reminds the employee that she must return company-issued equipment and abide by the previously agreed-to confidentiality provisions.

21.     For virtual employees, Kaplan Professional notifies them that they will receive shipping boxes and labels from Kaplan Professional in order to return their company-issued equipment.

### Kaplan Professional's Previous Interactions with Dalton

22.     On information and belief, Dalton was formed on May 5, 2009, and its principal office is located at 5400 Laurel Springs Parkway, Suite 202, in Suwanee, Georgia.

23.     On information and belief, Dalton's President and Founder is Joseph Gillice ("Gillice").

24.     Dalton is a direct competitor of Kaplan Professional in the CFP industry.

25.     Like Kaplan Professional, Dalton offers services and products for CFP certification.

26.     Like Kaplan Professional, Dalton offers exam preparation courses for CFP certification and sells CFP-related books and materials.

27.     Like Kaplan Professional, Dalton also offers CFP-related education courses, which include both live, virtual classroom courses and self-study programs.

28.     As a direct competitor of Kaplan Professional in the CFP industry, Kaplan Professional and Dalton compete for the same or similar clients and customers.

29.     Several of Kaplan Professional's former employees have worked, or are currently working, for Dalton.

30.     Because Dalton has hired away Kaplan Professional's employees in the past, Kaplan Professional has previously advised Dalton of Kaplan Professional's Confidentiality and Restriction Agreement, and, thus, Dalton is aware that Kaplan Professional's employees are bound by that agreement.

### Dalton's Efforts to Recruit Kaplan Professional's Employees

31.     Kaplan Professional employed Laramie McClurg ("McClurg") from 2010 to 2014.

32.     As part of his employment at Kaplan Professional, McClurg signed his Confidentiality and Restriction Agreement on April 27, 2010.

33.     McClurg resigned from Kaplan Professional in 2014 and accepted employment with Dalton.

34.     On information and belief, McClurg is currently the Director of Corporate Partnerships at Dalton.

35.     On information and belief, McClurg still resides in La Crosse, Wisconsin.

36.     On information and belief, McClurg recruits employees from Kaplan Professional in the La Crosse area and beyond with the intent of using Kaplan Professional's confidential information to help grow business for Dalton.  The Kaplan Professional employees recruited by McClurg include the Individual Defendants.

**Defendant Steers' Employment with Kaplan Professional**

37.     On or about March 8, 2010, Steers accepted an offer with Kaplan Professional for the position of Inside Sales Representative.

38.     As part of the onboarding process, Steers received Kaplan Professional's Employee Handbook, which contained a confidentiality policy.  On March 22, 2010, Steers agreed to "comply with the policies, guidelines and practices" in the Employee Handbook.  Steers acknowledged the Employee Handbook again in April 2016 and May 2018.

39.     Also as part of the onboarding process, Steers received Kaplan Professional's Information Technology Acceptable Use Policy.  On March 22, 2010, Steers acknowledged that she had reviewed the policy and agreed to abide by it.

40.     Roughly a month later, on April 27, 2010, Steers executed her Confidentiality and Restriction Agreement.

41.     From 2010 forward, Steers held a variety of positions at Kaplan Professional, including Sales Overlay, Education Product Specialist, Content Specialist, Content Manager, and Inside Sales Manager.

42.     By July 2018, Steers had risen to the position of Inside Sales Manager.

43.     On July 25, 2018, Steers learned that one of her direct reports had reached out to Laramie McClurg at Dalton about potential employment opportunities at Dalton.

44.     Kaplan Professional reminded Steers that it: (1) maintains a confidentiality clause in its employment processes; (2) sends statements of continuing obligations under the confidentiality clauses to former employees who go to work for a competitor; and (3) has sent letters to Dalton making it aware of the former employee's responsibilities not to use Kaplan Professional's intellectual property and/or trade secrets.

45.     In light of these warnings from Kaplan Professional, Steers indicated to Kaplan Professional that she wanted a letter drafted to send to her direct report reminding her of her obligations related to the confidentiality provision.

46.     Less than a year later, on the afternoon of Wednesday, March 20, 2019, Steers informed Kaplan Professional that she was resigning and joining Dalton.  Steers gave notice that her last day of work at Kaplan Professional was Friday, March 29, 2019.

47.     The following day, Redfearn abruptly resigned, as explained below, and Kaplan Professional learned that she, too, was going to Dalton.

48.     As a result, Kaplan Professional became concerned that the two employees may have been soliciting each other to resign to work for Dalton and may have taken Kaplan Professional's trade secrets and/or confidential, proprietary information.

49.     Kaplan Professional's Information Technology team conducted an initial review of the Individual Defendants' computer activity on Kaplan Professional's system and discovered that Steers and Redfearn had engaged in suspicious activity leading up to their resignations, including emailing Kaplan Professional's confidential proprietary documents to personal email addresses and/or moving these documents to a third-party Dropbox.

50.     Upon learning this information, Kaplan Professional engaged an outside company to conduct a full forensic review of the Individual Defendants' company-issued laptops.

51.     Because Steers was located in Kaplan Professional's La Crosse office, her company-issued laptop was obtained on her last day of work and then sent out for analysis.

52.     Forensic analysis shows that on the day of and the day after her resignation, Steers had an abnormal spike in download activity of Kaplan Professional's documents.  Specifically,

Steers used her company-issued computer to download Kaplan Professional's documents and confidential information into a third-party storage service Dropbox.

53.     On Wednesday, March 20, 2019, Steers downloaded several of Kaplan Professional's documents that contain confidential and trade secret information into a Dropbox that she did not regularly use.

54.     Steers downloaded the following confidential and proprietary documents: CSS CSM Training Guide; a copy of the 30.60.90 day plan; the December 2018 Sales Kaplan Financial Education ("KFE") Sales Variance Report; Kaplan's Sales Cycle; and the February 2019 KFE Sales Variance Report.

55.     Of these documents, Steers transferred the following documents to her third-party Dropbox: CSS CSM Training Guide; a copy of the 30.60.90 day plan; the December 2018 Sales KFE Variance Report; and Kaplan's Sales Cycle.  Steers also created a PowerPoint called "Align Execute and Access Template - 2019" that she added to the third-party Dropbox on March 20, 2019.

56.     These documents contain Kaplan Professional's business strategies and a detailed outline of revenue and product lines for Kaplan Professional customers in 2018.  In addition, they discuss internal training techniques designed to help employees obtain sales and improve their delivery of services to clients.

57.     At the time of separation, Steers also took a document that outlines revenue and product lines of Kaplan Professional customers, year to date, in 2019 based on February 2019 information.

58.     While Steers may have utilized these documents and information during the course of her employment with Kaplan Professional, she was neither authorized nor permitted to

misappropriate or take this confidential business information when she resigned, and she expressly was prohibited from doing so in light of her Confidentiality and Restriction Agreement.

59.     Kaplan Professional conducted an exit interview with Steers on or about March 22, 2019.

60.     During the week of March 25th, Steers made plans to travel to Atlanta to begin her training and employment with Dalton.

61.     Steers' last day of employment with Kaplan Professional was Friday, March 29, 2019.

62.     On information and belief, Steers traveled to Atlanta on Sunday, March 31, 2019 to begin her employment with Dalton.

63.     On April 3, 2019, Kaplan Professional sent a letter to Steers regarding violations of her Confidentiality and Restriction Agreement to her personal email address.  The same letter was sent via overnight mail to her last known address as well.

64.     Kaplan Professional's letter reminded Steers of her obligations under the Confidentiality and Restriction Agreement, as well as the Confidentiality Provisions in the employee handbook.  Further, Kaplan Professional notified Steers of its knowledge of her downloads of certain documents containing trade secret information.

### Defendant Redfearn's Employment with Kaplan Professional

65.     In the spring of 2010, Steers referred Redfearn for a position with Kaplan Professional.  Redfearn submitted an application on or about May 17, 2010.

66.     At the time, Redfearn was living in Holmen, Wisconsin.

67.     On or about May 19, 2010, Kaplan Professional offered Redfearn the position of Branch Sales Representative in La Crosse, Wisconsin.

68.     Redfearn began working at Kaplan Professional on June 1, 2010.

69.     As part of the onboarding process, Redfearn signed her Confidentiality and Restriction Agreement.

70.     Kaplan Professional also provided Redfearn a copy of its Employee Handbook.  On June 1, 2010, Redfearn agreed to "comply with the policies, guidelines and practices" in the Employee Handbook.

71.     Redfearn acknowledged the Employee Handbook again in April 2016 and May 2018.

72.     Kaplan Professional provided Redfearn a copy of the Information Technology Acceptable Use Policy.  On June 11, 2010, Redfearn acknowledged that she had reviewed the policy and agreed to abide by it.

73.     From 2010 forward, Redfearn held a number of positions with Kaplan Professional, including Client Relationship Representative II, Client Representative III, and Wealth Manager II.

74.     As a Wealth Manager II, Redfearn was responsible for supporting "growth" accounts and for educating, enrolling and supporting branch-level employees, branch managers and directors on Wealth Behavioral Finance.  The majority of Redfearn's duties focused on account management, sales activity, strategy and planning, traveling to conferences and trade shows, and interacting with clients.

75.     In July 2018, per her request, Kaplan Professional granted Redfearn permission to work from home because she was relocating from Wisconsin to Arizona.  Accordingly, Redfearn continued as an employee and Kaplan Professional allowed her to work from her new home in Maricopa, Arizona.

76.     In February 2019, Redfearn applied as an internal candidate for the position of Wealth Management Sales Development II.

77.     In March 2019, Redfearn learned that she was not selected for the position of Wealth Management Sales Development II.

78.     On March 7, 2019, Redfearn contacted Steers and asked if there was an open position on her team in Inside Sales. On the same day, Steers responded that she did not have an open position on her team.  Redfearn then asked Steers if she heard of anything opening up to let her know.  Steers agreed to inform Redfearn of any such opening.

79.     Kaplan Professional has discovered that on March 11, 2019, Redfearn sent to her personal email address confidential and proprietary student information regarding students' usage of exam preparation tools and how Kaplan Professional employees should engage those students. This information is not publicly known and is Kaplan Professional's confidential, trade secret information regarding its customers.

80.     Kaplan Professional was scheduled to interview Redfearn for another position on March 12, 2019; however, Redfearn declined the interview after she got information about the compensation for the position.

81.     On March 13, 2019, Kaplan Professional met with Redfearn to provide feedback on her interview for the Wealth Management Sales Development II position.

82.     Kaplan Professional has discovered that later that same day, March 13, 2019, Redfearn sent emails outlining her sales numbers for three clients to the Kaplan Professional representatives she met with to discuss feedback on her interview for the Wealth Management Sales Development II position in an effort to demonstrate why she felt she should have received the position.

83.     Redfearn forwarded this same email outlining the sales information for the three clients to her personal email address.

84.     On March 15, 2019, Redfearn forwarded to her personal email address several documents containing Kaplan Professional's trade secrets, including, among other things, screenshots of internal trainings that Kaplan Professional provides to its employees and addresses.

85.     On Monday, March 18, 2019, Redfearn forwarded to her personal email address an email from Kaplan Professional containing a link to a videocast with the President of Kaplan Professional discussing Kaplan Professional's standard operating objectives.   This video was explicitly noted as being for Kaplan Professional's employees and internal use only.

86.     On March 21, 2019, Redfearn submitted her notice of resignation to be effective immediately.

87.     On the same day, Redfearn sent to her personal email address several internal contacts for clients she was working with for CFP products on behalf of Kaplan Professional.

88.     During her exit interview with Kaplan Professional on March 22, 2019, Redfearn was informed that she was required to return the company-issued laptop as soon as possible.

89.     Despite this request, Redfearn failed to return her company-issued laptop in a timely manner.  Consequently, Kaplan Professional could not complete a full forensic analysis of Redfearn's laptop until it was returned.

90.     On or about April 3, 2019, Kaplan Professional sent Redfearn a letter notifying her that it had reason to believe that she had breached the Confidentiality and Restriction Agreement and that she had violated Kaplan Professional's policies on confidential information.  The letter further reminded Redfearn that she was not to engage in any activity to interfere with Kaplan Professional's relations with actual or potential clients or customers.

91.     On or about April 5, 2019, because Redfearn had not returned her company-issued laptop, Kaplan Professional again notified Redfearn that she must return it immediately.

92.     On or about April 6, 2019, Redfearn contacted Kaplan Professional and asserted that any emails she had sent to her personal email address from her Kaplan Professional email had been deleted.

93.     Redfearn did not return her company-issued laptop until Friday, April 12, 2019.

94.     Once received, Kaplan Professional sent Redfearn's laptop to a third-party vendor to conduct a full forensic analysis.

95.     Forensic analysis has now revealed that Redfearn, McClurg, and Gillice (Dalton's President and Founder) were in discussions about Redfearn joining Dalton as early as March 8, 2019.

96.     Further, between March 5, 2019 and March 28, 2019, Redfearn downloaded numerous documents containing Kaplan Professional's confidential, trade secret information to the hard drive of the company-issued laptop she used, specifically to the user download folder.

97.     Kaplan Professional has now discovered that while Redfearn was applying to Dalton for employment and, later, actually employed by Dalton, she downloaded Kaplan Professional's trade secret information including: client pricing information for its current contract and products; the client's reimbursement contract with its employees; several spreadsheets containing customer contact information and course information; and a client business plan.

98.     While Redfearn may have utilized these documents and information during the course of her employment with Kaplan Professional, she was neither authorized nor permitted to misappropriate or take this confidential business information when she resigned.

99.     Redfearn specifically intended and still intends to use Kaplan Professional's trade secrets to take business away from Kaplan Professional for Dalton, in direct violation of her Confidentiality and Restriction Agreement.

100.     Between March 21, 2019 and March 29, 2019, after her resignation from Kaplan Professional, Redfearn accessed her Kaplan Professional email address and drive to access and/or email to her personal email address client information including rosters for Kaplan Professional's CFP courses and internal contact information for at least four of Kaplan Professional's clients.

101.     Additionally, forensic analysis shows that Redfearn emailed numerous emails containing trade secret information to her personal email address beginning in March 2019 in preparation for her separation from Kaplan Professional.

102.     After her resignation, and while using the company-issued laptop that she failed to return upon her resignation, Redfearn acted at the direction of McClurg and on behalf of Dalton in sending and/or disclosing trade secret information belonging to Kaplan Professional.

103.     On March 24, 2019, McClurg, from his Dalton email address, specifically asked Redfearn what accounts she worked on closely at Kaplan Professional that she felt like she could have a direct impact on bringing in CFP sales for Dalton.  In her response on that same day, Redfearn disclosed which client accounts she worked on at Kaplan Professional.

104.     As a former employee of Kaplan Professional himself, McClurg knew that this information was protected, confidential information belonging to Kaplan Professional that was not publicly known, and that it had economic value to Kaplan Professional and any other competitor in the CFP industry if disclosed.

105.     McClurg, on behalf of Dalton, learned from Redfearn that she worked with one of Kaplan Professional's clients with which Dalton does not do business.  Dalton solicited Redfearn's assistance to steal Kaplan Professional's business from that client.

106.     Redfearn then planned, and still intends, to drive that business from Kaplan Professional to Dalton.  Redfearn also shared Kaplan Professional's business strategy with Dalton for the Kaplan Professional client and noted that, based on her relationship with the client's decision-makers, Redfearn would help Dalton to develop a proposal for the client to consider, which would counter Kaplan Professional's proposal.

107.     Following this exchange, and in preparation for traveling to Atlanta to meet with the Dalton team, Redfearn emailed herself previously downloaded sales reports and contacts for the identified Kaplan Professional client account that she discussed with Dalton.  All of these actions were done while using the company-issue laptop that Redfearn refused to return to Kaplan Professional upon resigning.

108.     Both Redfearn and Steers resigned from Kaplan Professional after taking Kaplan Professional's confidential, proprietary, and trade secret information to Dalton and at Dalton's direction.

109.     On information and belief, the Individual Defendants engaged in efforts to solicit each other to leave their employ with Kaplan Professional to work for Dalton.

110.     On May 10, 2019, another Kaplan Professional employee, Kyle Webster ("Webster"), submitted his notice of resignation.  On May 13, 2019, Webster notified a fellow employee that he was going to work for Dalton.

111.    When asked by a Human Resources representative where he was going to work, Webster sidestepped the question and did not provide an answer.  On information and belief, Webster was solicited to work for Dalton by Redfearn and/or Steers.

## CLAIMS

112.    Both Individual Defendants signed Confidentiality and Restriction Agreements with Kaplan upon their hiring in 2010.

113.    The Individual Defendants violated the Defend Trade Secrets Act, the Computer Fraud and Abuse Act, and the Illinois and Wisconsin Trade Secrets Acts.  The Individual Defendants also breached the Confidentiality and Restriction Agreement and their fiduciary duties, tortiously interfered with Kaplan Professional's prospective economic advantage, converted Kaplan Professional's documents, unfairly competed and unjustly enriched themselves, and misappropriated Kaplan Professional's trade secrets.  The Individual Defendants committed these acts to the benefit of Dalton before resigning from their Kaplan Professional employment and, therefore, while they each owed Kaplan Professional fiduciary duties.

114.    Kaplan Professional asserts the following claims against Dalton, Steers, and Redfearn, collectively and severally, as prescribed below: (a) violation of the Defend Trade Secrets Act; (b) violation of the Computer Fraud and Abuse Act; (c) violation of the Wisconsin Trade Secrets Act; (d) breach of duty of loyalty/fiduciary duty; (e) breach of contract; (f) violation of the Wisconsin Computer Crimes statute; (g) conversion/theft; (h) and tortious interference with prospective economic advantage.

115.    Prior to filing this action, Kaplan Professional attempted to secure the Individual Defendants' compliance with their continuing obligations, including sending them cease and desist letters.

116.     Additionally, Kaplan Professional notified Dalton of the Individual Defendants'
misconduct and attempted to secure its acknowledgment that it did not obtain nor use any
misappropriated trade secret information belonging to Kaplan Professional.  Kaplan Professional
sent two correspondences to Dalton, which went ignored and unanswered.

117.     Kaplan Professional seeks preliminary and permanent injunctive relief to stop
Defendants from engaging in additional wrongful conduct.  Kaplan Professional also seeks an
accounting and damages for the losses it has sustained as a result of Defendants' wrongful conduct
to date, imposition of a constructive trust and the disgorgement of salaries and benefits business
obtained as a result of the utilization of misappropriated trade secrets received by Defendants,
attorneys' fees, punitive damages, and costs as warranted by Defendants' egregious conduct.

**COUNT I**
**VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836**
**(Against All Defendants)**

118.     Kaplan Professional incorporates its allegations in Paragraph 1 through Paragraph
117 as if fully set forth herein.

119.     Kaplan Professional's trade secrets are proprietary and confidential to Kaplan
Professional, and they constitute protectable trade secrets under the Defend Trade Secrets Act.  See
18 U.S.C. § 1839(3) (defining the term "trade secret").

120.     Kaplan Professional has taken reasonable measures to protect and maintain the
secrecy and confidentiality of its trade secrets.

121.     Kaplan Professional's trade secrets are not generally known in the industry or to
the general public, and their secrecy confers substantial economic advantage and benefit to Kaplan
Professional.  Knowledge of the information would also confer a substantial economic benefit to
Kaplan Professional's competitors, including Dalton.

122.   The circumstances of the Individual Defendants' respective employment with Kaplan Professional gave rise to fiduciary duties and obligations to maintain the secrecy of Defendant's trade secrets and to strictly limit the use of such trade secrets to Kaplan Professional's business activities and for Kaplan Professional's exclusive benefit.

123.   Defendants, through improper means and without authorization, either directly or indirectly misappropriated, misused and/or disclosed Kaplan Professional's trade secrets to and for their own benefit.

124.   In addition, Dalton has been systematically targeting and soliciting Kaplan Professional's employees to work for Dalton, knowing that they possess specific knowledge of Kaplan Professional's trade secrets and that such trade secrets would provide immediate benefit to Dalton.

125.   As a direct and proximate result of Defendants' deliberate, willful and malicious misappropriation of Kaplan Professional's trade secrets, Kaplan Professional has sustained and will continue to sustain severe, immediate, and irreparable harm, damage and injury to the value of its trade secrets and competitive advantage, which Kaplan Professional has expended significant time, effort and money to secure.

126.   WHEREFORE, Kaplan Professional respectfully requests that the Court enter an order granting judgment in favor of Kaplan Professional and against Defendants on Count I including the following relief:

> (a)   The issuance of preliminary and permanent injunctive relief enjoining Defendants, and every person or entity acting in concert with them, including, but not limited to, Dalton, from directly or indirectly misappropriating, disclosing and/or using Kaplan Professional's trade secrets;

> (b)   The issuance of an injunction compelling Defendants, and every person or entity acting in concert with them, including, but not limited to Dalton, to

return all documents and other materials containing or constituting Kaplan Professional's trade secrets;

(c)     The award of compensatory damages in an amount to be determined at trial;

(d)     The award of exemplary and other damages pursuant to 18 U.S.C. § 1836(b)(3)(C);

(e)     Reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D); and

(f)     Such other relief as the Court deems just and proper.

**COUNT II**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030**
**(Against the Individual Defendants)**

127.    Kaplan Professional incorporates its allegations in Paragraph 1 through Paragraph 126 as if fully set forth herein.

128.     The Individual Defendants' company-issued computing devices were each used in interstate commerce, and they each constitute a "protected computer" under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(e)(2)(b).

129.    Without authorization or by exceeding authorized access, the Individual Defendants intentionally accessed their respective company-issued computing devices with the intent to defraud Kaplan Professional in violation of Sections 1030(a)(2)(c), (a)(4), and (a)(5) of the CFAA, including by: (i) obtaining certain information from the company-issued computing devices and/or Kaplan Professional's network; (ii) obtaining copies of certain documents and files of value from the company issued computing devices and/or Kaplan-Professional's network; and (iii) deleting electronic files from the company-issued computing devices and/or Kaplan Professional's network.

130.    By engaging in the foregoing misconduct for the purpose of misappropriating Kaplan Professional's confidential information and trade secrets, the Individual Defendants

breached their fiduciary duties and other obligations owed to Kaplan Professional.  The Individual Defendants had no authority or authorization for the foregoing misconduct.

131.   The Individual Defendants intentionally and recklessly caused damage and loss to Kaplan Professional in excess of $5,000 because their conduct impaired the integrity of Kaplan Professional's protected computers and required Kaplan Professional to expend resources in excess of $5,000 to investigate the foregoing misconduct, conduct forensic examination of the devices to ascertain the scope of the Individual Defendants' misconduct and perform certain remedial measures required as a result of such misconduct.

132.   WHEREFORE, Kaplan Professional respectfully requests that the Court enter an order granting judgment in favor of Kaplan Professional and against the Individual Defendants on Count II and ordering the following relief:

> (a)   The issuance of preliminary and permanent injunctive relief enjoining the Individual Defendants, and every person or entity acting in concert with them, from directly or indirectly misappropriating, disclosing and/or using Kaplan Professional's trade secrets;

> (b)   The issuance of an injunction compelling the Individual Defendants, and every person or entity acting in concert with them, including, but not limited to Dalton, to return all documents and other materials containing or constituting Kaplan Professional's trade secrets;

> (c)   The award of compensatory damages in an amount to be determined at trial pursuant to 18 U.S.C. § 1030(g); and

> (d)   Such other relief as the Court deems just and proper.

## COUNT III
## VIOLATION OF THE WISCONSIN TRADE SECRETS ACT, § 134.90 WIS. STATS.
### (Against All Defendants)

133.   Kaplan Professional incorporates its allegations in Paragraph 1 through Paragraph 132 as if fully set forth herein.

134.     Kaplan Professional's confidential, proprietary and trade secret information related to its sales, customers and prospective customers, pricing structures, compensation plans, strategic plans for new and expanded business, sales and analysis comparisons, its competitive advantage in the industry and other documents described in the preceding paragraphs are sufficiently secret to derive economic value for Kaplan Professional.  This information is not generally known to others who can obtain economic value from its disclosure or use, including Kaplan Professional's competitors like Dalton.

135.     During their employment with Kaplan Professional, the Individual Defendants had access to Kaplan Professional's trade secrets and other nonpublic confidential information that was of significant value to Kaplan Professional.

136.     Kaplan Professional has taken extensive efforts to maintain the secrecy and confidentiality of its trade secrets both within its internal operations and its business dealings, so that its competitors cannot obtain economic value from this information.  The value of the information described in the preceding paragraphs to Kaplan Professional's competitors, like Dalton, is substantial.  This information cannot be easily acquired by individuals outside of Kaplan Professional.

137.     Individual Defendants had an absolute obligation and duty to maintain the secrecy of Kaplan Professional's trade secret information as described in the foregoing paragraphs and to use that information solely for the purpose of supporting Kaplan Professional's business.

138.     At the time Defendants acquired Kaplan Professional's trade secrets, they knew or should have known that the trade secret information had been acquired through improper means and under circumstances giving rise to a duty to maintain secrecy of the information and that the information was not used to Kaplan Professional's detriment.

139.     Notwithstanding the foregoing, Individual Defendants have willfully and maliciously breached their duties to Kaplan Professional and have willfully and maliciously misappropriated and will continue to misappropriate Kaplan Professional's trade secret and confidential information that they acquired during their employment with Kaplan Professional.

140.     At all times relevant to this action, the Wisconsin Uniform Trade Secrets Act, Wis. Stat. § 134.90 et seq., was in effect.

141.     Defendants' misappropriation and use of Kaplan Professional's trade secrets for their own purposes and to benefit Dalton are intended to prejudice and hurt Kaplan Professional and its business, which is in violation of § 134.90, Wis. Stats.

142.     The trade secrets, confidential and proprietary information that the Individual Defendants misappropriated and will continue to misappropriate include information related to Kaplan Professional's sales, customers and prospective customers, pricing structures, financial performance, compensation plans, strategic plans for new and expanded business, sales and analysis comparisons, and competitive advantage in the industry. The full extent of the misappropriation will be ascertained during discovery and ongoing forensic review.

143.     The trade secrets identified herein derive independent economic value from not being generally known to, and not readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use, and Kaplan Professional engaged in reasonable efforts to maintain their secrecy.

144.     Defendants have and will continue to use Kaplan Professional's trade secrets and confidential information to compete directly with Kaplan Professional on behalf of Dalton.

145.    Because Defendants are competing directly with Kaplan Professional's business, Kaplan Professional has and will continue to be damaged by Defendants' misappropriation of its trade secrets and confidential information.

146.    Defendants' conduct, as alleged, violates § 134.90, Wis. Stats., and is outrageous, egregious, malicious, intentional, willful and in reckless disregard of the rights of Kaplan Professional and entitles Kaplan Professional to punitive damages.

147.    Defendants' misappropriation and continued misappropriation of Kaplan Professional's trade secrets and confidential information has and will result in damage to Kaplan Professional's business and business interests, and has and will continue to result in Defendants' unjust enrichment, and unless restrained, Defendants will continue to be unjustly enriched to Kaplan Professional's prejudice and damage.

148.    WHEREFORE, Kaplan Professional respectfully requests that the Court enter an order granting judgment in favor of Kaplan Professional and against Defendants and ordering the following relief:

(a)    The issuance of preliminary and permanent injunctive relief enjoining Defendants, and every person and entity acting in concert with them, including, but not limited to, Dalton, from directly or indirectly misappropriating and/or using Kaplan Professional's trade secrets;

(b)    The issuance of an injunction compelling Defendants, and every person and entity acting in concert with them, including, but not limited to, Dalton, to return all documents and other materials containing or constituting Kaplan Professional's trade secrets;

(c)    The award of compensatory damages in an amount to be determined at trial;

(d)    Exemplary and other damages pursuant to § 134.90(4), Wis. Stats;

(e)    Reasonable attorneys' fees pursuant to § 134.90(4), Wis. Stats; and

(f)    Such other relief as the Court deems just and proper.

## COUNT IV
## BREACH OF THE DUTY OF LOYALTY/FIDUCIARY DUTY
### (Against the Individual Defendants)

149.     Kaplan Professional incorporates its allegations in Paragraph 1 through Paragraph 148 as if fully set forth herein.

150.     The Individual Defendants owed Kaplan Professional a duty of loyalty as employees of Kaplan Professional.

151.     The Individual Defendants possessed control over and knowledge of various key aspects of Kaplan Professional's business.

152.     The Individual Defendants breached their duty of loyalty to Kaplan Professional by acting directly in opposition to Kaplan Professional's interests when they took Kaplan Professional's proprietary, confidential, and trade-secret information while employed by Kaplan Professional.

153.     Further, the Individual Defendants breached their duty of loyalty when they used Kaplan Professional's proprietary, confidential, and trade secrets information on behalf of Dalton.

154.     The Individual Defendants were aware that they were forbidden from disclosing Kaplan Professional's proprietary, confidential, and trade secret information.

155.     The Individual Defendants used the knowledge imparted to them though their positions at Kaplan Professional to steal business, or attempt to steal business, from Kaplan Professional to the benefit of Dalton.

156.     In doing so, the Individual Defendants took actions directly contrary to Kaplan Professional's interests, both individually and in conjunction.    Accordingly, the Individual Defendants breached their duty of loyalty to Kaplan Professional.

157.     Kaplan Professional has suffered and will continue to suffer irreparable harm and other damages as a result of the actions of the Individual Defendants.

158.     WHEREFORE, Kaplan Professional respectfully requests that the Court enter an order granting judgment in favor of Kaplan Professional and against the Individual Defendants and ordering the following relief:

(a)     The issuance of preliminary and permanent injunctive relief enjoining the Individual Defendants, and every person and entity acting in concert with them, including, but not limited to, Dalton, from directly or indirectly misappropriating and/or using Kaplan Professional's trade secrets;

(b)     The issuance of an injunction compelling the Individual Defendants, and every person and entity acting in concert with them, including, but not limited to, Dalton, to return all documents and other materials containing or constituting Kaplan Professional's trade secrets;

(c)     The award of compensatory damages in an amount to be determined at trial;

(d)     Exemplary and other applicable damages;

(e)     Reasonable attorneys' fees; and

(f)     Such other relief as the Court deems just and proper.

## COUNT V
## BREACH OF CONTRACT
### (Against the Individual Defendants)

159.     Kaplan Professional incorporates its allegations in Paragraph 1 through Paragraph 158 as if fully set forth herein.

160.     The Confidentiality and Restriction Agreements entered into by the Individual Defendants are enforceable contracts.

161.     The Individual Defendants breached the terms of their Confidentiality and Restriction Agreements when they both, acting individually and in collaboration, disclosed and used Kaplan Professional's proprietary, confidential, and trade secret information.

162.     Based on information and belief, the Individual Defendants breached the terms of their Confidentiality and Restriction Agreements when they both solicited, encouraged, and induced one another to terminate employment with Kaplan Professional and join Dalton.

163.     The Individual Defendants breached the terms of their Confidentiality and Restriction Agreements when they both solicited Kaplan Professional's clients and engaged in activities to interfere with, disrupt, or damage Kaplan Professional's relationship with actual and potential clients.

164.     WHEREFORE, Kaplan Professional respectfully requests that the Court enter an order granting judgment in favor of Kaplan Professional and against Defendants and ordering the following relief:

> (a)     The issuance of preliminary and permanent injunctive relief enjoining the Individual Defendants, and every person and entity acting in concert with them, including, but not limited to, Dalton, from directly or indirectly misappropriating and/or using Kaplan Professional's trade secrets;

> (b)     The issuance of an injunction compelling the Individual Defendants, and every person and entity acting in concert with them, including, but not limited to, Dalton, to return all documents and other materials containing or constituting Kaplan Professional's trade secrets;

> (c)     The award of compensatory damages in an amount to be determined at trial;

> (d)     Exemplary and other applicable damages;

> (e)     Reasonable attorneys' fees; and

> (f)     Such other relief as the Court deems just and proper.

**COUNT VI**
**WISCONSIN COMPUTER CRIMES STATUTE, § 943.70, WIS. STATS.**
**(Against the Individual Defendants)**

165.     Kaplan Professional incorporates its allegations in Paragraph 1 through Paragraph 164 as if fully set forth herein.

166.    The Individual Defendants willfully, knowingly, and without authorization took possession of data, computer programs, or supporting documents in violation of Wis. Stat. § 943.70 when they copied Kaplan Professional's proprietary, confidential, and trade secret information by downloading such information and sending it to personal email addresses.

167.    The Individual Defendants willfully, knowingly, and without authorization accessed computer programs, took possession of Kaplan Professional's data and supporting documentations, and copied the data or supporting documents in violation of § 943.70(2)(a)(3)-(6), Wis Stats.

168.    WHEREFORE, Kaplan Professional respectfully requests that the Court enter an order granting judgment in favor of Kaplan Professional and against Defendants and ordering the following relief:

(a)    The issuance of preliminary and permanent injunctive relief enjoining the Individual Defendants, and every person and entity acting in concert with them, including, but not limited to, Dalton, from directly or indirectly misappropriating and/or using Kaplan Professional's trade secrets;

(b)    The issuance of an injunction compelling the Individual Defendants, and every person and entity acting in concert with them, including, but not limited to, Dalton, to return all documents and other materials containing or constituting Kaplan Professional's trade secrets;

(c)    The award of compensatory damages in an amount to be determined at trial;

(d)    Exemplary and other applicable damages;

(e)    Reasonable attorneys' fees; and

(f)    Such other relief as the Court deems just and proper.

### COUNT VII
### CONVERSION/THEFT
### (Against All Defendants)

169.    Kaplan Professional incorporates its allegations in Paragraph 1 through Paragraph 168 as if fully set forth herein.

170.     Defendants intentionally and without authorization took control of Kaplan Professional's confidential, proprietary, and trade secrets information when the Individual Defendants downloaded and/or sent Kaplan Professional's information to their personal devices and/or email accounts for use at Dalton.

171.     Kaplan Professional did not consent to Defendants' taking or use of its confidential, proprietary, and/or trade secrets information and took measures against such use by requiring its employees to enter into agreements not to disclose this information.

172.     WHEREFORE, Kaplan Professional respectfully requests that the Court enter an order granting judgment in favor of Kaplan Professional and against Defendants and ordering the following relief:

(a)     The issuance of preliminary and permanent injunctive relief enjoining Defendants, and every person and entity acting in concert with them, including, but not limited to, Dalton, from directly or indirectly misappropriating and/or using Kaplan Professional's trade secrets;

(b)     The issuance of an injunction compelling Defendants, and every person and entity acting in concert with them, including, but not limited to, Dalton, to return all documents and other materials containing or constituting Kaplan Professional's trade secrets;

(c)     The award of compensatory damages in an amount to be determined at trial;

(d)     Exemplary and other applicable damages;

(e)     Reasonable attorneys' fees; and

(f)     Such other relief as the Court deems just and proper.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONSHIPS
### (Against Dalton)

173.     Kaplan Professional incorporates its allegations in Paragraphs 1 through Paragraph 172 as if fully set forth herein.

174.   Dalton was aware that Kaplan Professional's employees were subject to a Confidentiality and Restriction Agreement when it hired the Individual Defendants.

175.   Without justification or privilege, Dalton wrongfully interfered with Kaplan Professional's Confidentiality and Restriction Agreements by inducing the Individual Defendants to leave Kaplan Professional and join Dalton.

176.   Without justification or privilege, Dalton wrongfully interfered with Kaplan Professional's Confidentiality and Restriction Agreements by inducing the Individual Defendants to solicit Kaplan Professional's clients and inducing the Individual Defendants to take Kaplan Professional's trade secret information for use at Dalton.

177.   Dalton's interference is intentional as it knowingly and purposefully made contact with Kaplan Professional's employees in an effort to gain knowledge of Kaplan Professional's proprietary, confidential, and trade secret information, and to induce their breach of Kaplan Professional's Confidentiality and Restriction Agreement.

178.   WHEREFORE, Kaplan Professional respectfully requests that the Court enter an order granting judgment in favor of Kaplan Professional and against Defendants and ordering the following relief:

    (a)    The issuance of preliminary and permanent injunctive relief enjoining the Dalton, and every person and entity acting in concert with it, from directly or indirectly misappropriating and/or using Kaplan Professional's trade secrets;

    (b)    The issuance of an injunction compelling Dalton, and every person and entity acting in concert with it, to return all documents and other materials containing or constituting Kaplan Professional's trade secrets;

    (c)    The award of compensatory damages in an amount to be determined at trial;

    (d)    Exemplary and other applicable damages;

    (e)    Reasonable attorneys' fees; and

(f)     Such other relief as the Court deems just and proper.

## COUNT IX
## TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONSHIPS
### (Against Redfearn)

179.    Kaplan Professional incorporates its allegations in Paragraphs 1 through Paragraph 178 as if fully set forth herein.

180.    Kaplan Professional has business and economic relationships with customers with which Redfearn now intends to interfere in violation of her Confidentiality and Restriction Agreement.

181.    Redfearn intentionally interfered with Kaplan Professional's relationships with third parties without justification or privilege by using knowledge relating to such relationships for her own personal gain and to the benefit of Dalton in violation of her Confidentiality and Restriction Agreement.

182.    WHEREFORE, Kaplan Professional respectfully requests that the Court enter an order granting judgment in favor of Kaplan Professional and against Defendants and ordering the following relief:

(a)     The issuance of preliminary and permanent injunctive relief enjoining Redfearn, and every person and entity acting in concert with her, including, but not limited to, Dalton, from directly or indirectly misappropriating and/or using Kaplan Professional's trade secrets;

(b)     The issuance of an injunction compelling Redfearn, and every person and entity acting in concert with her, including, but not limited to, Dalton, to return all documents and other materials containing or constituting Kaplan Professional's trade secrets;

(c)     The award of compensatory damages in an amount to be determined at trial;

(d)     Exemplary and other applicable damages;

(e)     Reasonable attorneys' fees; and

(f)     Such other relief as the Court deems just and proper.

Respectfully submitted,

Date: June 3, 2019

*s/Kendall W. Harrison*
Kendall W. Harrison (1023438)
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Telephone:    (608) 257-3911
Facsimile:    (608) 257-0609
Email: kharrison@gklaw.com

*Attorney for DF Institute, LLC*


Thomas M. Williams
ULMER & BERNE LLP
500 West Madison Street, Suite 3600
Chicago, IL 60661-4587
Telephone:    (312) 658-6500
Facsimile:    (312) 658-6501
Email: twilliams@ulmer.com

*Counsel for DF Institute, LLC*


Jeffrey S. Dunlap
Halden R. Schwallie
ULMER & BERNE LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, OH 44113-1406
Telephone:    (216) 583-7000
Facsimile:    (216) 583-7001
Email: jdunlap@ulmer.com
Email: hschwallie@ulmer.com

*Counsel for DF Institute, LLC*

## **Jury Demand**

Plaintiff demands a jury trial on all claims so triable.


_s/Kendall W. Harrison_
*Attorney for DF Institute, LLC*

20702395.1