IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DF INSTITUTE, LLC,
d/b/a KAPLAN PROFESSIONAL,

                      Plaintiff,

  v.

DALTON EDUCATION, LLC, ALLISON STEERS, and
CYNDEE REDFEARN,

                      Defendants.

OPINION and ORDER

19-cv-452-jdp

---

Plaintiff DF Institute, LLC, doing business as Kaplan Professional, sells products and services for those preparing to be certified financial planners. Dkt. 1, ¶¶ 9–10. Defendants Allison Steers and Cyndee Redfearn were Kaplan employees, but both now work for defendant Dalton Education, LLC, which is Kaplan's competitor. *Id.*, ¶¶ 24, 46, 86. Kaplan alleges that Steers and Redfearn both took Kaplan's confidential materials with them when they resigned so that they could give Dalton a competitive advantage over Kaplan. *Id.*, ¶¶ 37–108. Kaplan is asserting eight different causes of action against defendants, including misappropriation of trade secrets under both state and federal law.

Kaplan has moved for a preliminary injunction, Dkt. 3, which is ready for review.[1] Kaplan doesn't identify any harm it has suffered so far, but it seeks an injunction "to stop Dalton from using the stolen information to irreparably harm Kaplan Professional's corporate

---

[1] Kaplan has also filed a motion to compel discovery. Dkt. 27. Magistrate Judge Stephen Crocker will address that motion in a separate order.

relationships and to stop the Individual Defendants from continuing to disclose protected information to Dalton." Dkt. 4, at 12.[2]

---

[2] At the conclusion of its opening brief, Kaplan identifies the following things that it wants the injunction to do:

>(1) Enjoining Defendants, and every person and entity acting in concert with them, from directly or indirectly misappropriating and/or using Kaplan Professional's trade secrets already obtained by Defendants, including, but not limited to:
>
>(a) Accessing or using the following information: Kaplan Professional's client-specific research and relationship data; information relating to Kaplan Professional's confidential business practices and business strategies; and other trade secrets;
>
>(b) Soliciting Kaplan Professional's clients through the use of: Kaplan Professional's client-specific research and relationship data; information relating to Kaplan Professional's confidential business practices and business strategies; and other trade secrets;
>
>(c) Inducing Kaplan Professional's employees to violate their employment agreements;
>
>(d) Violating any agreements made with Kaplan Professional; and
>
>(e) Using Kaplan Professional's trade secrets to develop business plans, proposals, and other competitive materials, to be used internally at Dalton to develop strategy or externally to solicit clients;
>
>(2) Compelling Defendants, and every other person or entity acting in concert with them, to return all documents and other materials containing or constituting Kaplan Professional's client-specific research and relationship data; information relating to Kaplan Professional's confidential business practices and business strategies; and other trade secret data, including the requirement of independent verification that such information has been purged from their files, systems, networks, servers, or any other storage mechanism.

Dkt. 4, at 31.

In response to Kaplan's motion, defendants acknowledge that Steers and Redfearn retained some Kaplan documents when they left their employment, but defendants contend that Steers and Redfearn did so "inadvertently," that the documents are "unimportant," and that Dalton hasn't used the documents "for any purpose." Dkt. 46, at 1. Regardless, Joseph Gillice (Dalton's president) says that he has taken the following steps to prevent any misuse of the documents:

- directed his sales staff not to use or delete "any materials that came from Kaplan via Redfearn and Steers," Dkt. 49, ¶ 14;

- directed his sales staff to inform him if anyone possessed such materials, *id.*;

- informed his employees about the lawsuit and directed them to preserve any documents relevant to the complaint, *id.*, ¶ 15;

- hired Stroz Freidberg, LLC, a forensic consulting firm, *id.*, ¶ 16.

Gillice says that Stroz Friedberg is taking the following actions:

- identifying and preserving relevant data and assessing whether any Kaplan materials taken by Redfearn or Steers were disseminated, accessed, or used by Dalton, *id.*;

- taking custody of Redfearn's and Steers's email and Dropbox accounts, *id.*, ¶ 17;

- preserving and isolating the data in those accounts, *id.*;

- developing a plan to remediate any Kaplan material found in the accounts, *id*.

Defense counsel say that they, as part of the negotiated remediation plan, will destroy or return any Kaplan materials identified through the forensic search. Dkt. 47, ¶ 3(d).

A party isn't entitled to a preliminary injunction unless it shows that it will suffer irreparable harm without that relief. *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). In its reply brief, Kaplan doesn't identify any shortcomings with the steps

that Dalton is taking and it doesn't identify any additional steps it believes that defendants should take.

Nevertheless, Kaplan says it is entitled to an injunction, citing *Lakeview Tech., Inc. v. Robinson*, 446 F.3d 655, 657 (7th Cir. 2006), for the proposition that "[i]njunctions issue to curtail palpable risks of future injury; it is not essential to establish that the worst has come to pass." But *Lakeview* isn't instructive. At this point, the question isn't whether any documents in defendants' possession could be used to harm Kaplan. Rather, the question is whether defendants' remedial measures are adequate to prevent the harm.

Kaplan also provides reasons to doubt that Steers and Redfearn's retention of Kaplan's documents was unintentional. But that is a separate question. If Kaplan means to argue that it should not be required to trust the parties it is suing, then it has a point. But defense counsel has promised to share its forensic report with Kaplan, Dkt. 47, ¶ 3(d), so trust isn't required. And the court expects that defendants will provide Kaplan verifiable proof of all the other actions taken by Dalton, its staff, and Stroz Friedberg to protect Kaplan's materials. If defendants fail to do so or if evidence arises that defendants' actions are insufficient to prevent irreparable harm, then Kaplan may renew its motion then. *See Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, No. 18-3402, — F.3d —, 2019 WL 2724564, at *3 (7th Cir. June 28, 2019) ("If circumstances change, the parties are always free to return to the district court to ask for changes."). But for now, the court isn't persuaded that Kaplan has shown a "clear need" for the "extraordinary equitable remedy" of a preliminary injunction. *See Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015).

ORDER

IT IS ORDERED that plaintiff DF Institute's motion for a preliminary injunction, Dkt. 3, is DENIED.

Entered July 19, 2019

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge